### WRIGHT v. SOUTHERN RAILWAY CO.

(Filed April 14, 1903.)

NEGLIGENCE—*Trestles—Hand Cars—Railroads—Trespassers.*

> The operator of a hand car may assume that persons on a trestle will step off, and he owes no duty to them until he discovers by their conduct that they can not or do not intend to leave the track, and this conduct must manifest itself positively and not be inferred from remaining on the track.

ACTION by Edna Wright against the Southern Railway Company, heard by Judge *Thomas A. McNeill* and a jury, at November Term, 1902, of the Superior Court of GRANVILLE County. From a judgment for the plaintiff, the defendant appealed.

*B. S. Royster* and *F. P. Hobgood,* for the plaintiff.
*Hicks & Minor* and *F. H. Busbee & Son,* for the defendant.

MONTGOMERY, J.   The plaintiff brought this action to recover damages for personal injuries alleged to have been received through the negligence of defendant. She, together with three other persons, all women, was walking on a trestle, a part of the defendant's railroad, when a hand-car under the management of one of defendant's section masters was

driven upon the trestle and partly over the body of the plaintiff. The four were walking behind each other, the plaintiff being next to the rear, and the approach of the hand-car was from that direction. The plaintiff had notice, and said to one of the party, "Don't be scared, Mr. Daniel will not run over us." One of the party crossed over the trestle in safety and the two others than the plaintiff stepped to one side on the trestle.

The plaintiff testified that on account of her nerves she could not step off and stand on the cross-ties. "I was," she said, "scared and I knew I could not have stood on account of my nerves." The plaintiff said she saw a card stuck up at the end of the trestle, which contained a notice forbidding persons to go on the trestle, but she did not read it. All of the evidence on the size and construction of the trestle was that it was eleven feet wide; that the width of the track up to the outer edge of the rails was five feet, and that the car did not project beyond the rails. The track was straight for about 500 yards and the section master saw the four persons on the trestle and could have stopped the car with ease after he saw them. He said that he had frequently encountered people on the trestle and that they always stepped aside on the approach of the car. He testified further: "When I first came in sight of the trestle about a quarter of a mile off, I saw four women on it. As I came nearer behind the women I saw first one and then another get off, the speed of the car having then greatly slackened. When I saw the third person apparently did not intend to step off, but was apparently hurrying, I did everything in my power to stop the car. It stopped just about as it reached her, striking her slightly. Her leg slipped between the cross-ties. I saw her in plenty of time to stop if I had known that she would not step to one side, as the others had done. After I found that she apparently did not intend to step aside, which I saw after the

two persons between her and the car stepped off, when she was about thirty feet from me, I used every exertion to stop, but could not prevent the car from slightly running against her."

1.   The main question which the defendant's appeal presents for decision is, What, if any, is the degree of care which railroad companies are required to use, when operating hand-cars upon their tracks, towards pedestrians crossing trestles? The defendant's counsel admitted that if in the present case the plaintiff's injury had been caused by the handling of a locomotive engine, the defendant would have been guilty of negligence and the plaintiff would be entitled to damages, although she herself contributed to her own injury.   But it is contended for the defendant that a different rule of law ought to be applied to the same facts where the injury has been caused by the operating of a hand-car, and from that point of view his Honor was requested to instruct the jury as follows.   2.   "The rule of law in regard to persons in charge of a locomotive, when a trespasser or pedestrian is seen walking upon the trestle, does not apply to persons in charge of a hand-car crossing a trestle, if the jury shall find there was a space three feet wide outside the rails upon which inexperienced women could stand, and did stand safely."

3.   "That persons in charge of a hand-car have a right to presume that a woman walking on a trestle is in the possession of her faculties and will step off the track to a place of safety, if there is such place in easy access which any ordinary person could safely reach, and upon which such person could safely stand; and if such person be injured because, on account of her state of nerves, unknown to defendant's employees, she thought she could not stand on such place, the injury will not be attributed to defendant's negligence, if defendant acted upon the presumption that she would act as ordinary persons do."

His Honor refused to give the last sentence of the defendant's third prayer, and added to the first section, which was substantially given in the charge, these words: "And this assumption (that the plaintiff was in possession of her ordinary faculties, and that on the approach of the car she would either leave the track, if she could, or get into a place of safety, if under the circumstances she could do so, and if there was such place), he the section master might act on until discovering the peril of a nearer approach, he then failed to use all the proper and necessary vigilance and care to check the speed of the car, and if in consequence of this failure the plaintiff was injured, you ought to answer the first issue (as to the negligence of the defendant) 'Yes.'"

We are of the opinion that the prayer for instructions ought to have been given and that the modification of the third prayer ought not to have been made. Railroad companies are entitled to the full and free use and enjoyment of their property, including the right to operate their trains and cars to fit their schedules, unrestrained and unfettered by individuals, and to use their hand-cars to repair their tracks and construct new ones. Persons who use these tracks for private purposes, except at crossings, have no legal right to do so. In some of the decisions of the courts of the States of the Union, the responsibility of railroad companies through their engineers in charge of moving trains as to persons on the track, begins when the engineer actually sees the peril of the trespasser. But under the decisions of our court the engineer is required to keep a lookout, and if he could have seen a person on the track and failed to do so, and through that failure to keep a lookout an injury occurs, the company is negligent and liable for the injury, except "where an engineer sees on the track in front of the engine, which he is moving, a person walking or standing whom he does not know at all, or who is known by him to be in full possession of

his senses and faculties, the former is justified in assuming up to the last moment that the latter would step off the track in time to avoid injury, and if such person is injured, the law imputes it to his own negligence and holds the railroad company blameless." The quotation is from *High v. Railroad,* 112 N. C., 385. The decisions to that effect, both before and after that of the case last mentioned, are numerous. Our decisions, however, as to the duty of engineers towards persons walking or standing on trestles or bridges mark out a very different rule from that which prevails as to persons walking or standing on the track, but not on a trestle or bridge. The engineer is required to use such diligence and care to prevent injury to a person on a trestle or bridge, as a reasonably prudent man would use under like circumstances. The reasons for this rule are apparent. Amongst them may be mentioned the terror and nervousness produced by the rapid movement' of a heavy train—engine and cars—the danger from smoke and cinders and escaping steam, the narrow width of the structure, the insecure footing, and the peril of a leap from the structure. In such cases the law requires a strict lookout on the part of the engineer, and although the person on bridge or trestle is a trespasser, yet, because of the sacredness of human life and then because of the circumstances above mentioned, proper and reasonable care must be taken that he be not injured. The reason of the rule which governs in those cases can not be urged as applicable to the facts in this case now before us. The hand-car was a simple platform on wheels, propelled probably by chain and crank, and just covering in width the rails. There was a space of three feet on each side of the car. The section master on the hand-car had frequently met persons on that trestle, who invariably had stepped aside without injury. On the present occasion, two of the party moved to one side and were unhurt, and the plaintiff gave as her only reason for not doing as the others

did, that she was nervous and afraid to stand to one side. That condition of the plaintiff was unknown to the section master. We can not think that the same rule of liability ought in reason to obtain in a case like this as controls in a case where one is in peril upon a bridge or trestle upon the approach of the locomotive and train.

We think the true rule is and ought to be, in a case like the one before us, that the section master, the operator of the hand-car, might assume that the pedestrian would step off like other persons in possession of their faculties had done, and that he would owe no duty to a person on the trestle until he had discovered by the behavior and conduct of such person that he could not, or did not, intend to leave the track; and that behavior or conduct to manifest itself positively, and not to be inferred from simply remaining on the track. After discovering as above described that the plaintiff did not intend to leave the track or could not, then it would be the duty of the section master to use every available means to prevent injury. This is what the section master testified he did, and there was no evidence to the contrary. There was error for which there must be a

New Trial.